PUTNAM COUNTY *v.* WHITE COUNTY.

(*Nashville.* December Term, 1917.)

1. **COUNTIES. Statute. Setting boundary dispute. Validity.**

Private Acts 1915, chapter 477, placing within White county a strip of land of about three hundred and forty acres claimed by Putnam county, is valid, since the latter county never acquired such land by any act of the legislature or by possession or dominion thereover, and such strip was in undisputed possession of White county when Constitution, article 10, section 4, forbidding reduction of area of a county of less than five hundred square miles, became operative. (*Post, p.* 24.)

Acts cited and construed:   Acts 1853-54 ch. 320;   Acts 1915, ch. 477.

2. **COUNTIES. Acts creating. Validity.**

If act of 1854 (Laws 1853-54, chapter 320), establishing Putnam county, included within boundary of such county land nearer than twelve miles to the courthouse of an old county, it was invalid in view of Constitution 1834, article 10, section 4, providing that the line of a new county shall not approach the courthouse of any old county from which it was taken nearer than twelve miles. (*Post, pp.* 24, 25.)

Cases cited and approved:   Ford v. Farmer, 28 Tenn., 152; Gotcher v. Burrows, 28 Tenn., 585;   Maury County v. Lewis County, 31 Tenn., 236;   Marion County v. Grundy County, 37 Tenn., 490;   Bridgenor v. Rodgers, 41 Tenn., 259.

Constitution cited and construed:   Article 10, sec. 4 (1834).

3. **COUNTIES. Boundary dispute. Power of legislature.**

Where White county continued to exercise sovereignty over strip in dispute for more than forty-eight years and thereafter Put-

nam county asserted dominion for about thirteen years, it was competent for the legislature to confer the strip upon White county, although it had been guilty of laches in submitting to encroachment; the strip being anciently within the domain of White County. (*Post. pp.* 25, 26.)

4. **COUNTIES. Boundary disputes. Laches.**

Although submission of White county to encroachment of Putnam county for thirteen years might have barred the right. of the former to recover the strip in dispute, it could, as a defense in a suit by the latter county, set up Private Acts 1915, chapter 477, Placing disputed territory within the former. (*Post, pp.* 26, 27.)

Cases cited and distinguished: Roane County v. Anderson County, 89 Tenn., 259.

5. **COUNTIES. Boundary disputes. Laches.**

Laches and acquiescence must exist for a period of twenty years to estop a complaining county from recovering its territory over which another county has unlawfully asserted dominion. (*Post, pp.* 27, 28.)

Acts cited and construed: Acts 1915, ch. 477.

Cases cited and approved: Putnam County v. Smith County, 129 Tenn., 394; McMillan v. Hannah, 106 Tenn., 689.

Constitution cited and construed: Art. 10, sec. 4 (1870).

6. **CONSTITUTIONAL LAW. Counties. Retroactive statutes. Fixing boundaries.** .

Priv. Acts 1915, chapter 477, placing certain territory claimed by Putnam county within White county, is not in violation of Constitution, article 1, section 20, forbidding retroactive laws or laws impairing the obligation of contracts, since the territory originally belonged to White county and was never assigned to Putnam county by any valid act of the legislature or otherwise acquired. (*Post, pp.* 28, 29.)

Acts cited and construed: Acts 1915, ch. 477.

Constitution cited and construed: Art. 1, sec. 20.

Putnam County v. White County.

7. **CONSTITUTIONAL LAW.** Parties entitled to raise constitutional questions.

Putnam county cannot attack Private Acts 1915, chapter 477, because it undertakes to transfer a three hundred and sixty acre tract from White county to Putnam county, since one not adversely affected by a statute cannot question its validity. (*Post, p.* 29.)

Acts cited and construed: Acts 1915, ch. 477.

Cases cited and approved: Noell v. Eastern Power Co., 130 Tenn., 245; Palmer v. Express Co., 129 Tenn., 116; Kelly v. State, 123 Tenn., 516; Richardson v. Young, 122 Tenn., 524.

8. **COUNTIES.** Suit between counties. Boundary dispute.

A suit by one county to recover disputed territory from an adjoining county may be brought in the courts of the former; it being an apparent exception to the rule that a municipal corporation such as the former county may only be sued in the county in which it is located. (*Post, pp.* 29-31.)

Cases cited and approved: Peircy v. Johnson City, 130 Tenn., 231; Nashville v. Webb, 114 Tenn., 432; Maury County v. Lewis County, 31 Tenn., 236; Marion County v. Grundy County, 37 Tenn., 490; Bridgenor v. Rodgers, 41 Tenn., 259; ·Roane County v. Anderson County, 89 Tenn., 259; McMillan v. Hannah, 106 Tenn., 689; Putnam County v. Smith County, 129 Tenn., 394; Union County v. Knox County, 90 Tenn., 541.

9. **COUNTIES.** Reducing area. Validity of statute.

Putnam county, having an area of less than five hundred square miles, could not be further reduced by Private Acts 1915, chapter 656, in view of Constitution, art. 10, section 4. (*Post, pp.* 31-33.)

Acts cited and construed: Acts 1915, ch. 656.

Constitution cited and construed: Art. 10, sec. 4.

---

FROM PUTNAM.

---

Appeal from the Chancery Court of Putnam County.—Hon. A. H. Roberts, Chancellor.

O. K. HOLLADAY, E. H. BOYD and SAM EDWARD, for appellant.

L. D. HILL and J. H. ANDERSON, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This ligitation involves a controversy over the boundary between Putnam county and White county. It is not necessary to make a detailed statement of the pleadings. The facts in the case were found by the chancellor, and this finding is made a part of the record in lieu of a bill of exceptions.

The decree of the chancellor was not satisfactory to either party, and both have appealed. The constitutionality of two acts of the legislature is involved, and the case has accordingly come directly to this court. Three strips of land are involved. On one of these strips is located the mining town of Ravenscroft, and we will first consider the controversy over this tract.

From the findings of the chancellor and elsewhere in the record, we ascertain these facts, as to the Ravenscroft land:

Putnam county was finally established by an act of the legislature passed in the year 1854 (Acts 1853-54, chapter 320); a previous act having been held invalid. Commissioners were appointed by this act to survey and fix the boundary lines of said county. This commission made a survey, which has been filed in this case, and the lines run and marked

by them included the Ravenscroft territory within the boundaries of Putnam county. It was formerly within White county. At the time of the survey and until within recent years, this section was wild, uninclosed, and sparsely populated. The line thus located by these surveyors was less than 12 miles from Sparta, the county seat of White county. Until the year 1902, White county, regardless of this survey, exercised exclusive sovereignty of this territory, the same having been up to that time of small value. In 1902, Putnam county made an official survey of the lines between it and White county, when it was ascertained that this Ravenscroft section, over which White county had been exercising sovereignty, was really, by the original survey, included within the boundary of Putnam county. Upon learning this fact the Putnam county court asserted the claim of Putnam county to this territory, and from that date up until the passage of chapter 477 of the Private Acts of 1915 Putnam county exercised exclusive sovereignty over the said territory, and White county acquiesced therein. Upon the passage of the aforesaid act of 1915, both counties asserted their claims to this territory, and the controversy herein was precipitated, Putnam county opening the litigation by a bill to enjoin the claims of White county.

In the year 1870, when the present Constitution of the State of Tennessee was adopted, neither Putnam county nor White county had an area of as much as three hundred and sixty square miles, and neither

county since the adoption of that Constitution has had an area of as much as three hundred and sixty square miles.

Chapter 477 of the Private Acts of 1915 is entitled "An act to change the county line between White and Putnam counties." This statute enacts that the line between said counties be changed so as to place within the boundary of White county what is known as the Ravenscroft strip, consisting of about three hundred and forty acres, and to place within the boundary of Putnam county certain other lands indicated, amounting to about three hundred and sixty acres. The Ravenscroft strip is valuable property, being the site of a coal mine, and having thereon a considerable town. The land transferred by this act from White county to Putnam county is uninhabited and of little value.

The chancellor upheld the validity of this statute, which was attacked by Putnam county, decreed the Ravenscroft land to White county and the three hundred and sixty-acre tract to Putnam, and from his action in this respect, Putnam county has appealed.

We think the chancellor was correct. Putnam county has never acquired a right to the land known as Ravenscroft strip.

Putnam county did not get this territory by the act of 1854, because if said statute undertook to include said territory within the limits of Putnam county, it was unconstitutional.

The Constitution of 1834 (article 10, section 4) provided that no line of any new county should approach the courthouse of any old county from which it was taken nearer than twelve miles. As we have theretofore seen, the line run by the commissioners through this controverted section did approach the courthouse of White county nearer than twelve miles. That is to say, the Ravenscroft strip was in less than twelve miles of Sparta.

This section of the Constitution of 1834 was repeatedly construed by this court, and Acts of the legislature in violation thereof were uniformly held invalid when assailed by the old counties whose territory had been unlawfully detached. *Ford* v. *Farmer,* 9 Humph. (28 Tenn.), 152; *Gotcher* v. *Burrows,* 9 Humph. (28 Tenn.), 585; *Maury County* v. *Lewis County,* 1 Swan (31 Tenn.), 235; *Marion County* v. *Grundy County,* 5 Sneed (37 Tenn.), 490; *Bridgenor* v. *Rodgers,* 1 Cold. (41 Tenn.), 258.

If the act of 1854 authorized the commissioners to include the Ravenscroft strip within the limits of Putnam county, which is denied, said act was invalid for the reasons stated. If the commissioners erroneously included said strip of territory within Putnam county, their act was likewise invalid, and without authority.

So that Putnam county never acquired this land by reason of any act of the legislature.

Neither did Putnam county acquire said land in dispute by possession or by acts of dominion thereover. The fact as found is that White county did not

recognize any claim of Putnam county to this strip of land, but White county continued to exercise sovereignty over same up until the year 1902, more than forty-eight years after Putnam county was established.

Nor did Putnam county acquire the Ravenscroft strip by the assertion of dominion from the year 1902 up to the passage of the act of 1915.

Although White county submitted to this encroachment of Putnam county for about thirteen years and was guilty of laches, still under the rule announced by this court in *Roane County* v. *Anderson County*, 89 Tenn., 259, 267, 14 S. W., 1079, it was competent for the legislature to definitely settle the boundary line between the two counties so as to confer the Ravenscroft strip upon White county. This is true because said land was anciently within the domain of White county, and had been unlawfully and without authority of law claimed and controlled by Putnam county. Although the laches of White county might have barred a suit by it to recover the land, such laches did not operate to defeat its legal right to the territory, but only deprived it of its remedy. The legislative act was available as a defense to the suit of Putnam county.

In *Roane County* v. *Anderson County*, supra, under a similar state of facts, this court said of Anderson county:

"Having recovered territory by an act of legislation, it is, as to such territory, seeking no affirmative

relief. Laches would not operate to bar a defense to a suit seeking to recover territory annexed by an act of legislative power. So that, if Anderson county can show that the territory annexed by this act was anciently within its domain, and has been unlawfully and without authority of law claimed and controlled by Roane, the defense will be effective, for laches has not operated to defeat the legal right, but had deprived it of legal remedy.''

The Ravenscroft land has been reassigned to White county by the act of 1915. Putnam county has acquired no possessory right to this territory which it can successfully assert. It had exercised dominion over these lands for about thirteen years at the time of this litigation. White county had only acquiesced in such claims for the same length of time.

We have recently held in *Putnam County v. Smith County,* 129 Tenn., 394, 164 S. W., 1147, that such laches and acquiescence must exist for a period of twenty years in order to estop a complaining county from recovering its territory over which another county had unlawfully asserted dominion. Less laches would certainly not bar a defense.

It is insisted in behalf of Putnam county that its boundaries were recognized by the Constitution of 1870, and that, inasmuch as its area is less than three hundred and sixty square miles, the legislature was without power to reduce its territorial limits by the act of 1915. Constitution 1870, article 10, section 4. For this we are referred to *McMillan v. Hannah,* 106

Tenn., 689, 61 S. W., 1020. In that case the court held the declaration of the Constitution of 1870 that Cheatham was a constitutional county made all lands then actually included within its territorial limits part of the county, regardless of whether they were originally assigned to that county by a valid law or not.

*McMillan* v. *Hannah* has been somewhat restricted in its scope by *Putnam County* v. *Smith County;* supra. Moreover, the former case is not in point here, if it be conceded that chapter 477 of the Acts of 1915 reduced the area of Putnam county. The Constitution of 1870 recognized the county of Cheatham in express language as follows:

"The counties of Lewis, Cheatham, and Sequatchie, as now established by legislative enactment, are hereby declared to be constitutional counties." Const. art. 10 section 4.

There is no express reference to Putnam county in the Constitution of 1870.

If it be argued that all counties then existing were recognized by that instrument as such counties were then constituted, nevertheless Putnam county could not have been recognized as actually embracing within its boundaries this disputed territory, since at that time White county was in possession of the territory and exercising undisputed sovereignty with reference thereto.

It is furthermore urged in behalf of Putnam county that the act of 1915 is in violation of section 20,

article 1, of the Constitution "that no retrospective law, or law impairing the obligations of contracts, shall be made."

Since this territory originally belonged to White county, and never was assigned to Putnam county by any valid act of the legislature, nor did Putnam county ever acquire a right thereto otherwise, it is difficult to see how the act of 1915 can be said to have taken away from Putnam anything that at any time belonged to that county.

We therefore conclude that all the assignments of error interposed in behalf of Putnam county to the chancellor's decree must be overruled.

Under repeated decisions of this court Putnam county may not attack chapter 477 of the Private Acts of 1915 by reason of the fact that that statute undertook to transfer the three hundred and sixty-acre tract from White county to Putnam county. Putnam cannot complain because White county is reduced in area. No one not adversely affected thereby can question the constitutionality of a statute. *Noell v. Eastern Power Co.,* 130 Tenn., 245, 169 S. W., 1169; *Palmer* v. *Express Co.,* 129 Tenn., 116, 165 S. W., 236; *Kelly* v. *State,* 123 Tenn., 516, 132 S. W., 193; *Richardson* v. *Young,* 122 Tenn., 524, 125 S. W., 664.

White county has assigned several errors to the action of the chancellor, which we now proceed to consider.

White county demurred to the original bill filed by Putnam county in the chancery court of Putnam county on the ground that a municipal corporation such as White county could only be sued in the county in which it was located. Such is the general rule. *Peircy* v. *Johnson City*, 130 Tenn., 231, 169 S. W., 765, L. R. A., 1915F, 1029; *Nashville* v. *Webb.* 114 Tenn., 432, 85 S. W., 404, 4 Ann. Cas., 1169.

An apparent exception is made to this rule in the case of a suit by one county to recover disputed territory from an adjoining county or to prevent an encroachment under an invalid statute. Such suits have uniformly been brought and entertained in the courts of the complaining county. *Maury County* v. *Lewis County*, 1 Swan (31 Tenn.), 235, was brought in the chancery court of Maury county. *Marion County* v. *Grundy County*, 5 Sneed (37 Tenn.), 490, was brought in the chancery court of Marion county. *Bridgenor* v. *Rodgers*, 1 Cold. (41 Tenn.), 259, which was a suit by Bridgenor and by Bledsoe county of the character above indicated, against Sequatchie county, was brought in the chancery court of Bledsoe county. *Roane County* v. *Anderson County*, 89 Tenn., 259, 14 S. W., 1079, was brought in the chancery court of Roane county. *McMillan* v. *Hannah*, 106 Tenn., 689, 61 S. W., 1020, asserting the right of Cheatham county against Dickson county to a disputed strip of territory, was brought in the chancery court of Cheatham county. *Putnam County* v. *Smith County*, 129 Tenn., 394, 164 S. W., 1147, was brought in the

chancery court of Putnam county.  See, also, *Union County* v. *Knox County*, 90 Tenn., 541, 18 S. W., 254.

So under the practice established by these cases and upon the authority thereof, this assignment of error is overruled.

White county assigns for error the action of the chancellor in holding partially or conditionally invalid chapter 656 of the Private Acts of 1915.  This statute purported to settle a dispute as to the boundary line between Putnam county and White county, and by its provisions certain territory, known as the Rose, Lowery, and Howell lands, was placed within the boundary of White county.

The chancellor found that there had been no substantial dispute between the two counties in this vicinity as to where the real line was prior to the passage of said act.  He found that the territory mentioned and undertaken to be transferred by said chapter 656 had not been claimed by White county, although there had been some doubt about the true location of the line at this point.  The chancellor also found in his decree that this territory was not within the prohibited distance from the courthouse at Sparta.

As stated heretofore, the evidence is not before us; this case being submitted on the chancellor's written findings.  From the language of the decree and the finding of facts, part of which has been set out, we must infer that this territory, or some of it, had

been lawfully included within the limits of Putnam county, and that the effect of said statute was to detach said lands from Putnam county and attach them to White county. White county not having previously claimed the lands. Since the area of Putnam county is less than five hundred square miles, a statute undertaking to further reduce said area, under the circumstances detailed, is obviously ineffective for such purpose. Constitution 1870, article 10, section 4; *McMillan* v. *Hannah,* supra.

The chancellor decreed that chapter 656 of the Private Acts of 1915, "in so far as it purports to detach any of said territory from Putnam county and attach the same to White county, is utterly void." On the record before us, this is a proper ruling.

The other assignments of error interposed by White county raise no substantial question for review except upon the division of costs ordered by the chancellor. We think the chancellor was correct in taxing half of the costs to White county, and are not disposed to interfere with this apportionment.

Upon the whole case, we think there is no error in the chancellor's decree, and it will be affirmed in all respects, and this cause remanded to the chancery court of Putnam county for further proceedings in accordance with said decree. The costs of this court will be divided between the two counties. Upon application of L. D. Hill and Smith, Word & Anderson, to fix their fees for services rendered White

county in this court, we find that $500 would be a reasonable fee for the services of L. D. Hill, and $500 would be a reasonable fee for the services of said firm. This in addition to the fees allowed by the chancellor for services below.