EAST TENNESSEE AND WESTERN NORTH CAROLINA MOTOR
TRANSPORTATION COMPANY, COMPLAINANT, APPELLEE,
*v.* DAN CARDEN, *et al.,* DEFENDANTS, APPELLANTS.*

(*Knoxville*, September Term, 1931.)

Opinion filed, June 6, 1932.

---

*On who may raise question of constitutionality of statute, see 6
R. C. L., 90; R. C. L. Perm. Supp., p. 1613.

418

ALBERT C. TIPTON and COX, TAYLOR & EPPS, for complainant, appellee.

DUGGER & REECE, for defendants, appellants.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Acts 1929, chapter 58, included in the Code of 1932 as sections 5471 *et seq.*, is a general statute comprehensive in its terms, designed to regulate the use of public highways by persons engaged in the business of transporting passengers and property for hire. Its constitutionality is challenged by the appellants herein.

The appellee, referred to herein as the Transportation Company, complainant in the court below, is a cor-

poration, engaged in the business of transporting passengers and freight between Johnson City and Shell Creek, *via* Elizabethton, in Washington and Carter Counties, for the conduct of which business it holds a "certificate of convenience and necessity," issued by the Railroad and Public Utilities Commission, pursuant to the statute cited. The original bill avers that the several defendants, appellants, without such certificate, were unlawfully competing with complainant for the patronage of the traveling public, to the injury and possible destruction of its business, by operating automobiles as common carriers of passengers, soliciting persons about to enter complainant's terminals, offering them reduced rates, and operating their automobiles a short distance ahead of complainant's motor busses, etc. The bill seeks injunctive relief.

Defendants made issues of fact by their answer, contending that the only business done by them on the routes covered by complainant's certificate was that of a private carrier, pursuant to contracts with individuals transported. The answer denies that the defendants solicited the patronage of the general public, as contended in the bill.

The Chancellor determined the issues of fact in accord with the contention of complainant, ruling that the defendants had violated vested rights of the complainant, under its certificate of convenience and necessity, by operating their automobiles or taxicabs as "common carriers," on announced schedules, soliciting passengers, and stopping at intermediate points to take on and discharge passengers, in open, wilful and unlawful violation of the provisions of the statute cited, and section one thereof.

On such finding of fact the Chancellor made perpetual an injunction restraining the several defendants "from operating their taxicabs or other motor vehicles as common carriers" on the highways embraced in the complainant's certificate of convenience and necessity. The decree then proceeds more particularly to enjoin and restrain the defendants: "from operating their said taxicabs or motor vehicles upon or in accordance with any schedule or schedules regular or otherwise, on and over any of said highways; and from stopping at any point or points upon said highways for the purpose of taking on and discharging passengers, other than their said private passengers, either upon the going or return trip, and from soliciting passengers or the traveling public or any patrons of complainant's lines or other persons, and from entering upon the premises of complainant in its regular station and terminals for the purpose of soliciting passengers in any way, whether by word of mouth, sign, blowing of horns or otherwise, and from establishing any fare or fares or charges for transportation, other than private charges contracted for as aforesaid, and from running upon said highways upon any schedule or schedules or otherwise for the purpose of intercepting passengers or inducing passengers to take passage upon their automobiles or motor vehicles, and from soliciting in any way or manner, and seeking out and picking up the prospective passengers or other persons at any place or time along said highways otherwise than under or in pursuance of private contract solicited and entered into between them and persons seeking such taxi service as defined in said Act and in this decree, at the starting or initial point of transportation for which said casual trip

is contracted at the time upon the solicitation of the party or parties seeking such services."

The general terms of this decree being an injunction against the operation of the defendant's motor vehicles as common carriers, the particular acts enjoined are prohibited when done in the furtherance of such business, or as incidental thereto.

The decree expressly recognizes and preserves to the defendants the right to make "casual trips on call or under contract" on the routes involved, in the manner specified in section 5475 of the Code of 1932.

We find that a great preponderance of the evidence sustains the finding of fact made by the Chancellor, that the defendants, at the time of the filing of the bill, were conducting their several businesses in the manner described in the bill, and that they were engaged in the business of soliciting and transporting passengers for hire, as common carriers of passengers.

It is contended by the appellants that the provisions of the statute, including control by the Railroad and Public Utilities Commission over rates and service to be rendered, are made to apply equally to common carriers and to private or contract carriers of passengers and freight, and that such legislative regulation of private or contract carriers is unconstitutional and void as in violation of the "law of the land" and "due process of law" clauses of the state and federal constitutions. Constitution of Tennessee, article 1, section 8; article 11, section 8, Constitution of the United States, Amendment 14. In support of this contention appellants cite *Smith v. Cahoon,* 283 U. S., 553, 75 L. Ed., 1264, and other decisions of the Supreme Court of the United States therein cited and referred to.

It is contended for the complainant that the statute, properly construed, is limited in its application to common carriers of freight and passengers, and does not regulate in any degree the business of private or contract carriers. The Solicitor-General for the State, as *amicus curiae,* has filed a brief in which it is insisted that the statute regulates the business of private carriers, as well as that of common carriers, but emphasis is placed on the language of the statute, section 1 (Code, section 5471), that the certificate of convenience and necessity shall not be required ''when such requirement would be contrary to the Constitution or laws of the United States or the Constitution of this state;'' and that the operators shall be subject to the control, regulation and supervision of the Commission ''to the full extent allowed by the Constitution and laws of the United States and the Constitution of this state.'' The Solicitor-General argues: ''If this regulation should be held ineffective with respect to any kind or class of carrier or with respect to any provision of the Act, then the provisions of the Act which should be held to be valid should stand and be enforced.'' Citing: *Clark* v. *Poor,* 274 U. S., 554, 71 L. Ed., 1199.

The findings of fact made by the Chancellor, in which we have concurred, and the terms of the injunction awarded, exclude from the case before us any judicial determination of the rights of a private or contract carrier. The injunction restrains the defendants only from acts done in furtherance of or incidental to their business of common carriers. If the statute purports to regulate the business of a private carrier, in an unconstitutional manner, no rights of the defendants are thereby violated.

In *Kelly* v. *State,* 123 Tenn., 516, 554, 132 S. W., 193, the validity of a statute was challenged as violating the due process of law clause of the constitution, and declining to consider the point, this Court said: "It is conceded by learned counsel, and the concession is well sustained by the authorities, that a citizen, asking the courts to set aside an act of the legislature because violative of the constitution in these respects must bring himself clearly within the case stated and relied upon. . . .

"The courts sit for the purpose of determining the rights of parties as they are presented upon the records brought to them. They cannot enter into a general discussion of the state of the law, but must confine themselves to the issues raised upon the record, and hence we decline to express any opinion upon the constitutional questions under consideration for the reason that the plaintiff in error has clearly failed to show that it is within the application of those provisions of the constitution invoked in its behalf."

 When the constitutional infirmity urged against a statute is an arbitrary and unreasonable classification of the subject of the legislation, it is the established rule that the person making the question must show himself adversely affected by the classification, in order to invoke a judicial ruling thereon. *Noell* v. *Eastern Power Co.,* 130 Tenn., 245, 169 S. W., 1169; *Palmer* v. *Express Co.,* 129 Tenn., 116, 165 S. W., 236; *Hyde* v. *State,* 131 Tenn., 208, 215, 174 S. W., 1127; *Putnam County* v. *White County,* 140 Tenn., 19, 29, 203 S. W., 334.

We are invited by the assignments of error to construe the statute as applying to private carriers, and then to hold that the inclusion of private carriers in the regulation and control provided operates to destroy the

legislation, so that not even common carriers are bound by its provisions. The authorities cited clearly bind us to decline this investigation, in an action to which no private carrier is a party. The assignments of error do not question the constitutionality of any limitation made by the statute on the rights and business of common carriers, and it is only in the prosecution of their business as common carriers that the decree of the Chancellor affects the appellants. The record before us does not present any issue involving rights of a private carrier, and it is therefore immaterial to the appellants whether the statute regulates such carriers or not. If the proper construction of the statute would operate to deny due process of law to private carriers, the appellants, in the conduct of their business as common carriers, are not adversely affected thereby, and therefore are not entitled to question the constitutionality of the statute on that ground.

■ It is further contended that the statute creates an arbitrary and unreasonable classification, in violation of article 11, section 8, of the constitution of the state, in that it exempts from its requirements "persons operating trucks or other motor vehicles for the sole purpose of transporting or delivering milk or milk products from the producer to the purchaser" (Code, section 5476), and persons who convey perishable farm products or live stock to market "in cases of emergency" (Code, section 5477).

These exemptions, appellants say, create "a discrimination between all carriers engaged in the same business of transporting for hire, and differing only in the kind of commodities making up their loads."

The exemption in favor of those who carry perishable farm products or live stock to market is expressly restricted to "cases of emergency," and this restriction presupposes or assumes that the beneficiaries of the exemption are not engaged in the business of carrying or transporting such commodities. The exemption is extended in the same section of the Code (section 5477) to all "carriers of either freight or passengers who make only occasional trips," and we cannot assume that one who transports perishable farm products or live stock to market only in cases of emergency would be other than one who only makes occasional trips. There is certainly no arbitrary or unreasonable discrimination in this provision of the statute.

The transportation of milk and milk products from producer to purchaser is not a business which can ordinarily constitute the operator a common carrier. There is no evidence in the record on this point, and we do not judicially know that any persons in this State engage in such business in such way as to constitute them common carriers of milk and milk products. If so, the business possesses characteristics peculiar to itself, and we do not doubt the existence of conditions constituting reasonable grounds for its legislative exemption from the application of the statute.

"One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *City of Memphis v. State ex rel. Ryals,* 133 Tenn., 83, 179 S. W., 631, L. R. A. 1916B, 1151, Ann. Cas., 1917C, 1056.

■ In any event, we can see in this exemption no adverse discrimination as against the appellants whose business is confined to the transportation of persons.

Other exemptions contained in the statute are not urged as arbitrary on the brief of appellants in this Court.

■ The decree of the Chancellor directs that the cause be retained upon the docket "for the purpose of compelling and enforcing obedience to said injunction upon any proper procedure required for that purpose." The evidence indicates that some or all of the appellants have contracts to transport workers between their homes and place of employment, traversing a portion of the route covered by complainant's certificate. We cannot now determine, from the record before us the extent to which this business may be conducted by the appellants without constituting themselves common carriers, in violation of the injunction of the Chancery Court. The findings of the Chancellor and of this Court are upon evidence that appellants did not limit themselves to such contracts on the roads on which complainant operates. We think the Chancellor, pursuant to the order retaining jurisdiction, may properly entertain the petition of any or all the appellants, for approval of any proposed plan of conducting such business, if it may be done without violating the injunction or the statute. *Fuller* v. *Fuller,* 157 Tenn., 697, 11 S. W. (2d), 896. We make this suggestion because of the contention of appellants that many workers, living off the route of complainant's busses, have no other means of conveyance to and from their work at industrial plants near Elizabethton, and it seems fitting that they be accommodated, if possible, without subjecting appellants to citations for contempt because

of misapprehension as to the scope and effect of the injunction.

For the reasons stated herein, we affirm the decree of the Chancellor, and remand the cause to the Chancery Court of Carter County. The costs will be taxed to the appellants.