Joyner, Sheriff, *et al. v.* Priest, Comptroller, *et al.*

(*Nashville,* December Term, 1937.)

Opinion filed May 27, 1938.

K. T. McConnico and Jay G. Stephenson, both of Nashville, and Chas. M. Bryan, Frank H. Gailor, William Gerber, W. P. Battle, Jr., Sam S. Pharr, and Edward Kuhn, all of Memphis, for Guy Joyner *et al.*

Edwin F. Hunt, Chas. L. Cornelius, Thos. H. Malone, J. H. Ballew, and Wm. J. Wade, all of Nashville, Dudley Porter, Jr., of Paris, W. W. Craig, of Ripley, and L. L. Fonville, of Jackson, for Marshall Priest *et al.*

Mr. Justice Cook delivered the opinion of the Court.

The bill was filed by Guy Joyner, Sheriff, W. T. McLane, District Attorney, and Thomas Welford, foreman of the grand jury, public officials of Shelby County, W. Percy McDonald, a State official, Clarence Bowe, W. W. Fisher, E. A. Powell and Sam House, citizens and taxpayers of Shelby County. The object of the bill was to test the constitutionality of Chapter 13, Public Acts Third Extra Session of 1937, which created a Crime Commission; and if the Act is found valid the complainants ask for a judgment declaratory of their rights, duties and obligations under it.

It was charged that the Act violates provisions of both the State and Federal Constitutions and is void. The defendants demurred to the bill because (1) it presents no ground for a declaratory decree, and (2) the bill discloses no constitutional defect that would justify a decree declaring it void.

The chancellor found that the complainants were not entitled to a declaratory judgment but declared the Act unconstitutional. Both parties appealed. The complainants insist that the chancellor should have ruled, if the Act was constitutional, that the bill presents a case for a declaratory decree and that this court should reverse his ruling because (1) Guy Joyner, as sheriff, has a direct interest in knowing how far and to what extent he can be directed to serve process issued by the Commission or receive into his custody as jailer persons committed by the Commission for contempt; (2) W. T. McLane is directly interested in knowing the extent to which he must cooperate with the Commission, and whether he shall turn over his books and records and whether he can proceed to indict persons under arrest or prosecute persons under indictment contrary to immunities given or pardons granted by the Commission; (3) Thomas Welford, foreman of the grand jury, asserts that he has a special interest in knowing the extent to which he must refrain from indictment of persons who have been granted immunity by the Commission and to what extent he must reveal the secrets of the grand jury by orders of the Commission, and (4) other complainants insist that they have special rights in a decree declaratory as to whether they must obey the processes and orders of the Commission.

There is no merit in complainants' assignments of error to the action of the chancellor in holding that their bill presents no case for a declaratory decree. Elaboration is not necessary. It is sufficient to say, from the foregoing synopsis, substantially copied from complainants' brief, that no rights are involved upon which a declaratory decree could be made under their bill. The

decree of the chancellor sustaining the second ground of demurrer and holding that the bill presents no case for a declaratory decree is affirmed.

For reasons stated in the opinion filed in the cause of *Walter Rushing et al.* v. *Tennessee Crime Commission et al.*, 173 Tenn., 308, 117 S. W. (2d), 4, the action of the chancellor in sustaining the first ground of the demurrer and holding the act unconstitutional is reversed. As said in the opinion of *Rushing* v. *Crime Commission, supra,* the Act provides for a committee of inquiry, called the Tennessee Crime Commission, and confers upon the Commission authority to investigate, assemble facts, and make findings for a report to the Legislature as the basis for corrective legislation designed to protect the public against the consequences of crime, arising from whatever cause, and to provide means through which the duties imposed upon the Commission may be accomplished.

In addition to the ten or more constitutional infirmities alleged and relied on in the case of *Rushing* v. *Crime Commission, supra,* the complainants insist that the Act is unconstitutional because it applies religious and political tests as a qualification for the office of a Commissioner contrary to Article 1, Section 4; that it violates Article 11, Section 16, which commands observance of the bill of rights; that provisions of the Act ignore the separation of governmental powers between the three departments of the State, contrary to Article 2, Section 1, Article 3, Section 6, and Article 6, Section 1, of the Constitution; and that the Act violates the Fourth and Fourteenth Amendments to the Federal Constitution, in that it authorizes unlawful searches and seizure and discriminates between persons by making State officials ineligible to appointment on the Commission.

Looking to the statute thus assailed and testing it by the provisions of the Constitution above referred to, there appears no express or implied impingement upon either the Federal or State Constitutions.

■ It is insisted that the Act, and expressly section 7, makes an unconstitutional blanket appropriation to the Commission contrary to the letter and spirit of Article 2, Section 24 of the State Constitution, and confers unlimited power upon the Governor to expend State revenue according to his will, thus delegating to the Governor a legislative power contrary to Article 2, Section 2. That construction cannot be reasonably given the Act. The salary of the Commissioners was definitely fixed in section 1 of the Act at $1000 each per annum. A definite appropriation of $2500 per annum was provided by section 7 of the Act for maintenance and necessary office expenses of the Commission. These are definite appropriations, then section 7 provides further:

"Appropriation is hereby made to provide compensation for the above mentioned employees, together with the compensation of the Commissioners as fixed in this Act."

It is insisted that the provision of the Act above quoted is an effort to make a blanket appropriation giving to the Governor and Commission unlimited power to employ assistants, clerks, stenographers and other employees and fix their compensation and confers upon the Commissioners power to fix compensation subject to approval of the Governor. That provision involves no appropriation but merely confers authority to fix the compensation of the employees and subjects the conduct of the Commissioners in so fixing the compensation to the supervisory power of the Governor.

■ No power of expenditure is conferred upon the Governor nor can the power be implied from the provision authorizing him to limit and restrain expenditures by the Commission and keep the expenses within reasonable limits. That is a power incident to other expenditures of public money appropriated for public purposes concerning which we find an example by reference to Code, section 9958, where the Governor is given power to limit the compensation of special counsel employed for the State.

■ Moreover, the appropriation is not unlimited. Section 7 of the Act must be construed in connection with and as a part of chapter 211, Public Acts 1937, subsection 13, section 1, pages 812, 818, by which the Legislature made an emergency appropriation for any purpose authorized by law and for which no special appropriation is made. The Appropriation Act, in connection with the Act creating the budgetary and accounting systems and conferring power upon the director of the budget to prevent the unauthorized expenditure of State funds, very definitely limits the expenditure that could be made by the Commission under provisions of the Act.

■■ There is a presumption in favor of the validity of Acts passed by the Legislature and the courts cannot strike them down unless it is clearly shown that they contravene some provision of the Constitution. The power of the Legislature to enact laws is limited only by the Constitution and we find no constitutional limitation upon the power of the Legislature as exercised in passing chapter 13, Public Acts Third Extra Session of 1937. *Nashville, C. & St. L. Railway Co.* v. *Marshall County,* 161 Tenn., 236, 30 S. W. (2d), 268; *Smiddy* v. *City of Memphis,* 140 Tenn., 97, 104, 203 S. W., 512.

Affirmed.