__________IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

**FILED**

**February 4, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

**E1999-02277-COA-R3-CV**

|  |  |  |
|---|---|---|
| JOE PARKER, et. al, | ) | NO. 03A01-9906-CH-00202 |
|  | ) |  |
| Plaintiffs/Appellants | ) |  |
|  | ) | Appeal As Of Right From The |
| v. | ) | ROANE COUNTY CHANCERY COURT |
|  | ) | Docket No. 13,252 |
| BOARD OF COMMISSIONERS OF | ) |  |
| ROANE COUNTY, TENNESSEE, | ) | HON. FRANK V. WILLIAMS, III |
|  | ) |  |
| Defendant/Appellee | ) |  |
| and |  |  |
|  |  |  |
| BOARD OF COMMISSIONERS OF | ) |  |
| ROANE COUNTY, TENNESSEE, | ) |  |
|  | ) | ROANE COUNTY CHANCERY COURT |
| v. | ) | Docket No. 13,223 |
|  | ) |  |
| JOE PARKER, et. al, | ) |  |
|  | ) |  |
| Defendants/Appellants | ) |  |

For the Appellants:                                 For the Appellees:
Steven Douglas Drinnon                        Jack H. McPherson, Jr.
Dandridge, Tennessee                           Kingston, Tennessee


VACATED and
REMANDED                                                                        Swiney, J.

# O P I N I O N

        This is an appeal of a Roane Chancery Court order which enjoined Appellants, Joe

Parker, Mary Lynn Parker and Tiger Haven, Inc., from maintaining any Class I, wild or exotic

animals, on certain parcels of land in Roane County,[1] and from expanding the operation of Tiger

---

[1]The Trial Court permitted Plaintiffs to keep one tiger on one parcel of land.

1

Haven, Inc., except upon proper application and approval by the County. While not as exactly stated by the parties, the issues raised on appeal are whether (1) Appellee's refusal to rezone Appellants' property was arbitrary and capricious, (2) Appellants' use of parcel 22.06 is a pre-existing non-conforming use which may be expanded by Appellants, (3) Appellee's affirmative representations to Appellants and its failure to enforce its zoning ordinance for over six years estops it from now enforcing the zoning ordinances, (4) the A-2 zoning regulations are unconstitutionally vague and/or overbroad, (5) the A-2 zoning regulations and Appellee's actions in not rezoning Parcel 29.01 work an unreasonable discrimination against Appellants' property, and (6) the Trial Court erred in denying Appellants' motion asking that the judgment be altered or amended or a new trial had based on evidence discovered after the trial. For the reasons herein stated, we vacate the judgment of the Trial Court and remand the case to the Trial Court for further proceedings consistent with this Opinion.

## BACKGROUND

The parties filed with the Trial Court a detailed Stipulation of Facts in this case. Appellants raised an issue as to whether the stipulation as filed with the Trial Court was complete, as will be discussed later in this Opinion.[2] Nevertheless, that stipulation and the record together show the uncontested facts to be that on February 19, 1991, Mary Lynn Parker purchased a tiger from Kevin Antle of Sevierville. Antle removed the tiger from the State of Tennessee without Mary Lynn Parker's permission, in the spring of 1991. On May 24, 1991, Mary Lynn Parker purchased Parcel 22.06, a tract of land in Roane County which was zoned A-1 at that time. On May 29, 1991, she took the Class I feline examination administered by the State of Tennessee[3] and, having passed the test, constructed a facility to house the tiger she had purchased from Antle on Parcel 22.06. On July 31, 1991, a personal possession permit for the possession of one Class I animal was granted by

---

[2]See Technical Record, Vol. II, p. 238, para. 5: "The stipulation of facts presented to the Court omitted a stipulation between the parties 'There is no area zoned A-2 in Roane County, Tennessee'. If Mr. McPherson denies this representation then I invite him to object to this representation in writing."

[3]The test is required by Tennessee Wildlife Resources Agency Rule 1660-1-18-.06 and covers "basic knowledge of habits, health care, diseases, diet, exercise needs, housing and handling of the Class I species to be possessed."

the State of Tennessee to Mary Lynn Parker.[4] On August 12, 1991, Joe Parker appeared before the Roane County Board of Commissioners and announced that he and Mary Lynn Parker intended to keep and maintain this "pet tiger" on Parcel 22.06.[5] On August 21, 1991, an application for an importation permit was approved by the State of Tennessee for the importation of the tiger purchased from Mr. Antle in order for it to be relocated from the State of Pennsylvania to Tennessee. On September 18, 1991, the Parkers placed the tiger on Parcel 22.06.

On February 24, 1993, Mary Lynn Parker incorporated Tiger Haven, Inc., as a public benefit corporation under the Tennessee Nonprofit Corporation Act, for the purposes of studying the behavior of large cats in captivity and providing a sanctuary for animals that are abused, neglected, unwanted or in danger. On March 5, 1994, Mary Lynn Parker took possession of a second wild animal, a lion cub, on Parcel 22.06. She did not have the proper permit for the lion as required at that time from the State of Tennessee. On July 1, 1994, Mary Lynn Parker was issued a Class I Permanent Exhibitor's permit by the State of Tennessee.[6] Since September 1991, Parcel 22.06 has been used continuously to keep and maintain one or more Class I wildlife. There have been up to fifty (50) Class I animals on the property at one time. It has been inspected at least twice, one visit being unannounced, by Zoning Officer Kay Christopher. On those occasions, Christopher found the premises to be clean, particularly in the food service areas, with no feces from the tigers found in the

---

[4] **T.C.A. § 70-4-402 Definitions.** - (10) "Personal possession permit" means a noncommercial type permit issued to private citizens for ownership or possession of nonbreeding animals in small numbers. T.C.A. § 70-4-404. Permits - Fees. - (c) Class I wildlife. (1) provides that "Persons legally possessing Class I wildlife prior to June 25, 1991 shall obtain annually a personal possession permit to keep such Class I wildlife . . . After June 25, 1991, no new animals shall be brought into possession under authority of a personal possession permit. Persons in legal possession of one (1) or more species of Class I wildlife as of June 25, 1991, may maintain the lineage of such species up to a maximum of three (3) animals per species." Mary Lynn Parker's personal possession permit was renewed in June 1992 and June 1993.

[5] **Minutes of the Roane County Commission, Regular Meeting, August 12, 1991:** "(8) HEARING OF DELEGATION: At this time Mr. Joe Parker spoke of the construction of a pen he was building in order to keep a pet tiger at his residence on Graveyard Road in Roane County. Judy Grader spoke in favor of Mr. Parker keeping the tiger at his residence." There is no stipulation or evidence in the record indicating that the Commission took any action about the tiger at that meeting after "Mr. Joe Parker spoke."

[6] **T.C.A. § 70-4-401 Definitions.** - (9) "Permanent exhibitors" means those exhibits that are housed the entire year in facilities located within the State of Tennessee.

inspected areas. On November 17, 1996, Christopher wrote a report in which she stated that "I find, as of this date, Mr. Parker is in no violation of Roane County zoning regulations." The Tennessee Wildlife Resource Agency has published a memorandum which states that it has been noted on the inspection form that the facility meets or exceeds TWRA legal requirements pertaining to cage and perimeter security. The parties have stipulated that neither the County Commission nor the Planning Commission possesses any evidence documented by any state, federal, local or independent agency or authority regarding contamination of ground water or soil in relation to the plaintiff's caring for and maintaining Class I wildlife on Parcel 22.06.

On August 1, 1994, Tiger Haven, Inc. purchased a second parcel of land, designated as Parcel 29.01.[7] The Parkers have never kept or maintained Class I wildlife on parcel 29.01. On March 19, 1997, the Parkers announced a proposed expansion of Tiger Haven.

Roane County first became subject to a general zoning plan on May 4, 1990, when the Roane County Commission adopted the Roane County Regional Zoning Regulations. That plan provides for five types of districts, including one agricultural district, designated General Agriculture (A-1), three residential districts (R-1, R-2, R-3), three commercial districts (C-1, C-2, C-3), three industrial districts (I-1, I-2, I-3), and three floodplain districts (F-1, F-2, F-3). The Zoning Map which is a part of the Regulations provides for an A-1 zoning for Parcel 22.06. A-1 zoning is described in the Regulations as:

> 1103.1 A-1, General Agriculture District. This district is intended for application to areas with obvious rural and agricultural characteristics. It is the *least restrictive* of all zoning districts; it recognizes documented existing uses and structures as legitimate, whether such uses and structures are either implied or specified as a permitted use within these regulations. [Emphasis added.]

On November 19, 1991, the Roane County Commission amended its regional zoning regulations by adopting an A-2 agricultural district. A-2 zoning is described in the amendment as:

---

[7]Tiger Haven later purchased two additional parcels of land, designated as parcels 12 and 16, which we need not address as the Court was advised by the parties at oral argument that those two parcels have been sold and are no longer at issue in this appeal.

4

1103.2  A-2, Special Agricultural District.  This district is intended for application to rural areas intended for special agricultural uses and ares [sic] that are specifically or generally similar to agricultural uses that are or generally perceived to be a threat to the social and economic health, safety, and welfare of the county and its citizens.

1103.2.1  District determination criteria.  The following criteria are provided as a guide for determining the appropriateness of an A-2 designation.

a.  The initial district should encompass no less than one acre of land, but may be increased in size in increments of less than one acre.

b.  The district should be adjacent to either General Agricultural or industrially zoned properties and at least a mile from residentially zoned properties or any properties used for residential purposes that has a density of four (4) dwellings per acre.

* * *

1103.2.3  Permitted uses and structures.

a.  Animal shelters, preserves, reservations, kennels, livestock pens or yards and other places and uses intended for the keeping of wild, exotic, and other animals in a restrained or restricted space because [of] a potential threat to public health and safety.

b.  Single family residential uses where such use is required as an accessory use to the keeping of animals.

1103.2.4  Special exceptions

a.  Any agricultural or related use not specified above, that is determined by the planning commission to be a threat to the public health and safety or the economic security of the county.

At a Roane County Planning Commission meeting in early September of 1996, several Roane County residents appeared and expressed concern that Tiger Haven would expand off the original 9-plus acres (Parcel 22.06).  In response to this concern, Kay Christopher, Zoning Officer for Roane County, wrote a letter to Joe Parker on September 18, 1996, informing him that

5

Tiger Haven "is located in a special agricultural zone. Any expansion of the present operation must be approved by the Roane County Planning Commission." Joe Parker contacted Ms. Christopher by phone on October 3, 1996. She wrote him a second letter on October 4, 1996, explaining that:

> I am writing in response to your phone call of Oct. 3, 1996. Your property and surrounding properties are presently zoned A-1. If you expand your current operation of being a sanctuary for exotic animals, you would have to have that parcel of land rezoned to A-2. (I have attached a copy of A-1 and A-2 zoning regulations).
>
> You are currently being allowed to maintain your present operation in A-1 because you were grandfathered in, as you were already operating your facility when zoning was established in Roane County in 1990.
>
> If I can be of any further assistance, please call.

On October 17, 1997, the Appellants, seeking to expand their operations, applied, as instructed by Christopher, to re-zone Parcel 29.01 from A-1 to A-2. The zoning board of the Roane County Planning Commission refused to approve the request for rezoning. On November 13, 1997, the County Commission passed Resolution 11-97-02, authorizing and directing the County Attorney to file a lawsuit asking the Court to declare whether the Appellants are in compliance with applicable zoning regulations and, if not, asking the Court to enforce the same. On December 8, 1997, the Roane County Commission met. At that meeting, Joe Parker's request to re-zone Parcel 29.01 from A-1 general agricultural to A-2, special agricultural was discussed. The parties have stipulated that Parcel 29.01 satisfies the criteria provided as a guide for determining the appropriateness of an A-2 designation in § 1103.2 of the Roane County Zoning Code. Various Commissioners proffered their opinions, and citizens who live near the property proposed for re-zoning spoke both for and against the re-zoning at the December 8, 1997 meeting. The Commission took notice of the fact that the Planning Commission had denied Parker's request to re-zone Parcel 29.01 and therefore 10 votes would be required to override a Planning Commission decision. The vote being 3 yes and 12 no, the re-zoning request was denied.

On December 3, 1997, the Board of Commissioners of Roane County filed the first suit, a Petition in Roane Chancery Court, pursuant to T.C.A. § 13-7-111, seeking an order to

6

"prevent, enjoin and abate [the allegedly unlawful] uses of the Parker properties and for the removal of any Class I animals thereon except for one tiger placed on Parcel 22.06 on September 18, 1991." The petition also sought a Temporary Restraining Order, Temporary Injunction and Permanent Injunction pursuant to Rule 65.03 of the Tennessee Rules of Civil Procedure enjoining and restraining Appellants from placing additional Class I animals on any of the parcels at issue.

The Board of Commissioners also filed a Motion for Restraining Order asking the court to enjoin and restrain the Appellants from placing additional Class I animals on the parcels of land at issue. Appellants answered that the use of Parcel 22.06 as a haven for tigers was legal under A-1 zoning and was grandfathered when A-2 zoning was added to the county zoning plan, as evidenced by the County's admission of that fact in the County attorney's letter of July 15, 1996 to the Roane County Planning Commission, which stated, in part:

> With regard to the holding of exotic animals, Roane County has not expressly or by implication barred this use on land zoned for agriculture. The County may enact zoning to bar a State-permitted use of this type. However, any present use of land for holding of exotic animals would not be barred because it is used for this purpose prior to the enactment of local regulation.
>
> *   *   *
>
> Despite the fact that an activity is permitted by the State, the County still has the authority to regulate the uses of land. See generally *Mensi v. Walker,* 26 S.W.2d 132, 134 (1930) and OAG 85-288, 1985 Tenn. AG LEXIS 5.
>
> However, because the use of this land for the holding of exotic animals would predate any future attempts at zoning regulation, that use would be grandfathered in.

The Appellants also answered that their application to expand Tiger Haven from Parcel 22.06 to Parcel 29.01 should not have been denied because the use is authorized under Parcel 29.01's current A-1 zoning, since that zoning classification must be strictly construed. Further, they answered that the Board of Commissioners' Petition should be dismissed because the Roane County Zoning Regulations and County Commission Resolution #2101 adopting the zoning plan provide that:

> . . . no provision contained herein is intended or shall be applied in such a way as to create or cause a hardship on any existing industry or business or place any restrictions on private property owners, either

present or future, or infringe upon the constitutional rights of any individual to use or dispose of his property as he deems reasonable.

They also pointed out their "exemplary record with the Tennessee Wildlife Resource Agency which is charged with the duty of supervising facilities that operate within the State of Tennessee where Class I wildlife are kept."

On February 3, 1998, Appellants filed the second suit, a Petition for Certiorari in the Roane County Chancery Court, pursuant to T.C.A. § 27-9-101 *et seq.,* asking the Court to "review the actions or inactions of the respondents [Roane County Board of Commissioners] and determine whether these actions were an abuse of discretion by acting arbitrarily, capriciously and illegally." The Petition also asked the Court to grant A-2 zoning to Parcel 29.01.

On February 10, 1999, the Board of Commissioners answered the Petition for Certiorari. The Board stated that the Petitioners "are housing wild and exotic animals on the property contained in the petition or other property owned by the petitioners" and asserted that the Board had "made a finding that the community would not be well served by allowing such a use of the property when all the surrounding properties are utilized for domestic and agricultural uses." The Board asserted that the Petitioners' "keeping 50 wild or exotic animals upon Parcel 22.06 is a violation of the zoning ordinance," and that the Petitioners "can not and should not be allowed to 'bootstrap' their way into obtaining a judicial rezoning of the property by showing that they are currently using the property in violation of zoning regulations."

On February 11, 1999, the Chancery Court ordered the consolidation of the Board of Commissioners' suit and the Appellants' suit in the interest of judicial economy. The consolidated cases were heard on February 12, 1999, upon the pleadings, a Stipulation of Facts, trial briefs and oral arguments of counsel. The Trial Court then took the case under advisement. The Trial Court's written Opinion and Decree were filed on February 23, 1999. The Trial Court found, as pertinent to the issues appealed:

> . . . the Court holds that there was no pre-existing non-conforming use of the property as a business or commercial enterprise for the rescue and maintenance of Class I animals prior to the amendment of the

8

zoning code.

\* \* \*

. . . because Mr. and Mrs. Parker brought a pet tiger into the East Roane County area, which was zoned A-1, . . . it was recognized that there was a need for the creation of a district classification to be used when a property owner wanted to provide for wild or exotic animals.

\* \* \*

The Parkers placed a single tiger, described as a pet, on Parcel 22.06 on September 18, 1991. The County amended its zoning code to add the A-2 zone on November 19 of that same year. The question then becomes: Is the acquisition and maintenance of a single pet tiger by the Parkers on Parcel 22.06, prior to November 19, 1991, an existing "industrial, commercial, or business establishment in operation," as those terms are used in T.C.A. § 13-7-208(b)? If so, they not only have the right to keep that single Class I animal, but have the right pursuant to subsection (c) of the statute to "expand operations and construct additional facilities which involve actual continuance and expansion of the activities of the industry and business which were permitted and being conducted prior to the change in zoning. . . .

It should be noted that the right of the Parkers to keep this first tiger is not in issue. The County has not attempted to amend its zoning code to abate any activity which was previously legal. *Rives v. City of Clarksville,* 618 S.W.2d 502 (Tenn. Ct. App. 1981). The real issue between those parties has to do with subsection (c) of the statute which permits certain operations to be expanded and additional facilities constructed for the additional Class I animals. The first tiger may stay.

The Parkers do not deny that Joe Parker represented to the Commission that the first tiger was a pet, but nevertheless insist that the acquisition of that first tiger was a "rescue." Assuming that to be true, can a rescued animal not also be a pet? Does the rescue of a single animal, described by its owner as a pet, become an "industrial, commercial, or business establishment" within the meaning of the statute? And can the act of rescuing be considered a commercial or business activity separate and apart from the physical maintenance of the animals within the area regulated by the zoning code?

The Court considers that merely posing these questions is sufficient to provide the answers to them. Consequently, the Court finds, from the stipulated facts that prior to November 19, 1991 there existed no "industrial, commercial, or business establishment in operation" by any of the defendants within the meaning of T.C.A. § 13-7-208(b). Prior to that date, the Parkers kept one pet tiger, which they contended was rescued from harm or death, and which has been appropriately enclosed and maintained by them as required by T.C.A. § 70-4-401 *et seq.* These facts do not give them the right by statute to expand their operations after the amendment of the zoning code to now include approximately fifty (50) class I animals maintained on

9

land zoned for general agricultural uses. Indeed, the corporation, Tiger Haven, Inc., was not even created until February 24, 1993 and the second Class I animal was not placed on the property until March 5, 1994. Consequently, the Parkers' commercial or business operations cannot be said to have begun prior to the amendment of the zoning code, and there was no pre-existing, non-conforming use for those purposes.

\* \* \*

Defense counsel argues vigorously that to allow the County's zoning officer to represent to the Parkers that they were "grandfathered in" as a non-conforming use, and, in effect, induce them to "spend hundreds of thousands of dollars to properly secure their property and continues to rescue these magnificent creatures" is unfair and inequitable. Though not precisely stated, they argue that the County should be estopped to enforce its ordinance.

The stipulated facts, however, fail to support this argument. It does not appear from the stipulations that any money was expended by the Parkers subsequent to the letter of October 4, 1996 from Kay Christopher to Joe Parker. Neither do the facts show that they relied to their detriment upon any representations by any official of Roane County . . . . all the facts indicate that they acted on their own initiative and began conducting their activities as a commercial enterprise without any inducement from the County prior to the letter from the Zoning Officer of October 4, 1996.

\* \* \*

The final issue . . . [t]he Parkers allege that the actions on the part of Roane County Commission in failing to approve their application to rezone a property from A-1 to A-2 was arbitrary and capricious. . . . The latest pronouncement from the Court of Appeals is to be found in the case of *Day v. City of Decherd,* 1998 WL 684533 (Tenn. Ct. App. 1998) . . . . The Court, following the pronouncements in *Fallin,* noted that as long as the question of whether the property should have been rezoned is **fairly debatable,** the Court should not interfere in the decision of the legislative body.

\* \* \*

A review of the proceedings of the Roane County Commission shows that the Commission reasonably considered both sides of the issue and that the question of whether or not to rezone the Parkers' property was fairly debatable. Therefore, the County did not act arbitrarily or capriciously in denying the request to rezone the property to the A-2, Special Agricultural District.

Accordingly, all issues are resolved in favor of Roane County, Tennessee and against the original Defendants, who shall be enjoined from maintaining all Class I animals, except the original tiger, and may not expand their operations in the future except as otherwise

10

provided in the Roane County Zoning Regulations upon proper application and approval by the County.

The Trial Court stayed the enforcement of its injunction pending this appeal, but restrained the Appellants from taking possession or maintaining additional Class I wildlife from February 26, 1999 until the Appellate process is concluded.

After the Trial Court's decision, Appellants filed a Motion to alter or amend the judgment, and/or for new trial and/or to modify or amend the record, and/or stipulation of facts and findings of facts. One of the grounds for Appellants' motion was the post trial discovery by Appellants that, contrary to the stipulation presented to the Court that there was no area zoned A-2 in Roane County, certain parcels in Roane County were zoned A-2. The Trial Court held that this newly discovered evidence was not sufficient to warrant a new trial and denied Appellants' motion.

## DISCUSSION

Appellants contend, among other issues, that the Trial Court erred in refusing to grant a new trial and/or alter or amend the judgment based on new evidence. We think the resolution of that issue is dispositive of this appeal. Our standard of review on that issue is whether the Trial Court abused its discretion. *Seay v. City of Knoxville,* 654 S.W.2d 397, 400, 401 (Tenn. Ct. App. 1983). The discretion of a Trial Court to grant or not grant a new trial on newly discovered evidence is very broad. Discretion denotes the absence of a hard and fast rule. When invoked as a guide for judicial action, it requires that the Trial Court view the factual circumstances in light of the relevant legal principles and exercise considered discretion before reaching a conclusion. Discretion should not be arbitrarily exercised. The applicable facts and law must be given due consideration. *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn. 1996), quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520, 526 (1931).

On March 19, 1999, Appellants filed a "Motion to Alter or Amend the Judgments, and/or For New Trial and/or To Modify or Amend the Record and/or Stipulation of Facts or Finding of Facts." In that motion, they asserted:

11

3.    That pursuant to Rule 52 and/or Rule 60 of the *Tennessee Rules of Civil Procedure* and/or equity, the Stipulation of Facts and/or the record and/or Findings of Fact should be modified and amended to reflect that there is property in Roane County zoned A-2 (more particularly described below). The Honorable O. Duane Slone notified this Honorable Court that the Stipulation of Facts presented to the Court omitted a stipulation between the parties that "There is no area zoned A-2 in Roane County, Tennessee" in a letter dated February 15, 1999 (attached hereto as exhibit #1) and invited Mr. McPherson to respond to this contention in writing. This fact is further evidenced by an excerpt of the deposition testimony of Allen Williams, Chairman of the Roane County Planning Commission (attached hereto as exhibit #2).

Recently, it has come to the attention of counsel and the Parkers and T.H. that certain property in Roane County (Parcels 38 and 39, Group B, Roane County Tax Map 47) is zoned A-2. (Affidavits attached hereto as Exhibits #3 and #4.) This information came to the attention of Joe Parker on March 17, 1999 who provided it to counsel on March 19, 1999. This information constitutes newly discovered evidence and is an additional basis for the Parkers and T.H.'s Rule 59 Motion(s) to Alter or Amend the Judgments and/or for a New Trial.

Notwithstanding the motion with exhibits and affidavits, the Trial Court ordered:

The record and stipulation of facts are not amended to reflect: "There is properly [sic-property] zoned A-2 in Roane County (parcels 38 and 19 [sic-39] Group B, Tax Map 47 - more particularly described in Defendants/Counter Plaintiffs Affidavit and Affidavit of Counsel.)."

The granting or denial of a motion to alter or amend or for a new trial based on newly discovered evidence is within the discretion of the Trial Court. *Seay,* 654 S.W.2d at 400, 401. Newly discovered evidence must be of such character as to convince the Court that an injustice has been done and that a new trial will change the result. *Travis v. Bacherig,* 7 Tenn. Ct. App. 638 (1928). A further requirement is that by exercise of "reasonable diligence" the evidence could not have been procured for trial. *Frazier v. McFerren,* 402 S.W.2d 467, 472 (Tenn. Ct. App. 1964). A mere statement of due diligence is not sufficient, but the facts constituting diligence must appear, and the facts must be specifically set out. Mere general statement that affiant inquired among persons likely to know, is not sufficient, the particulars must be shown. *Seay* at 400.

We have carefully reviewed the record before us. From the record, it appears that there exists A-2 property in Roane County. Such a fact is relevant and material. Information about

12

the circumstances of that A-2 zoning may well be critical to the resolution of many of the issues raised at trial by Appellants. Appellants raised the issues of whether the Board's refusal to grant them A-2 zoning was arbitrary and capricious, whether the A-2 zoning classification is unconstitutionally vague and/or overbroad, and whether the Board's refusal to rezone their property to A-2 unreasonably discriminates. The existence of and circumstances surrounding the zoning of other property as A-2 in Roane County is material to the resolution of those issues.

In this case, Appellants deposed Allen Williams, the Chairman of the Board of Commissioners of Roane County, on January 29, 1999, two weeks before trial, and asked:

Q:     There's not an area in Roane County that's zoned A-2 at the present
       time, correct?

A:     Correct.

                              *   *   *

Q:     Do you know of any other requests, other than Mr. Parker's, to be zoned A-2?

A:     I'm unaware of any requests that has made it to the Planning Commission of an A-2
       classification.

Appellants were certainly entitled to rely on the sworn testimony of the Chairman of the Board of Commissioners that no property in Roane County had been zoned as A-2. Appellee, which prevailed in this lawsuit, is the entity ultimately responsible for zoning in Roane County and should have known whether other A-2 zoned property existed there. Williams' sworn response when deposed, that no other property in Roane County had been zoned A-2, satisfied Appellants' duty to use due diligence to discover this information.

We think the facts and circumstances surrounding the zoning of other property as A-2 in Roane County, when properly developed, may change the Trial Court's result in this case. Further, we think Appellants exercised due diligence in their efforts to discover this information when they relied on the sworn testimony of the Chairman of the Board of Commissioners that there was no other property zoned A-2 in Roane County. We find no suggestion in the record that Appellee or its agents intentionally misrepresented to Appellants and the Trial Court that no Roane County property had been zoned A-2. However, the record before us does indicate that it is more

13

likely than not that other property in Roane County has been zoned A-2, and that Appellants were told otherwise in discovery by Appellee, who should have known. We also note that Appellants discussed the issue of this newly discovered evidence in their brief, but Appellee did not address the issue in its brief. It is difficult for us to see how Appellee could object to the consideration by the Trial Court of the apparently correct fact that there was other property zoned A-2 in Roane County, especially so in this trial based not upon live testimony but upon stipulations. Therefore, we hold the Trial Court erred in refusing to grant Appellants' motion.

T.C.A. § 27-3-128 provides:

> **Remand for correction of record.** The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

This Court has previously applied T.C.A. § 27-3-128 in situations where justice requires a remand for a hearing to develop facts critical to a determination of one or more issues. *See Murvin v. Cofer,* 968 S.W.2d 304 (Tenn. Ct. App. 1997); *Sims v. Stewart,* 973 S.W.2d 597 (Tenn. Ct. App. 1998); The case now before us presents just such a situation.

We are aware that Appellants have asked that only parcel 29.01 and not parcel 22.06 be rezoned from A-1 to A-2. However, as we are remanding this case for further proceedings, and in order to avoid a piecemeal appeal, we decline at this time to address the other issues raised by Appellants. All parties will have an opportunity to appeal and raise any issue they believe appropriate on the entry of the Trial Court's final judgment after the proceedings necessitated by our order of remand.

**CONCLUSION**

For the reasons stated, we vacate the judgment of the Trial Court and remand this case to the Trial Court for the taking of evidence or supplementation of the stipulations of fact by the parties concerning other A-2 properties in Roane County, for further proceedings consistent with this

14

Opinion, and for decision by the Trial Court after receipt and consideration of this additional evidence. Costs of this appeal are assessed one-half against the Board of Commissioners of Roane County, Tennessee, and one-half against Appellants, Joe Parker, Mary Lynn Parker, and Tiger Haven, Inc.

_____
D. MICHAEL SWINEY, J.

**CONCUR**:

_____
HOUSTON M. GODDARD, P.J.

_____
HERSCHEL P. FRANKS, J.